UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA


UNITED STATES OF AMERICA        )
                                )        No. 1:09-CR-187
v.                              )
                                )        Chief Judge Curtis L. Collier
ABRAHAM A. AUGUSTIN and         )
LORRANCE B. DAIS                )


## M E M O R A N D U M

Before the Court are motions for judgment of acquittal and/or new trial filed by Defendants

Abraham Augustin ("Augustin") and Lorrance Dais ("Dais") (collectively, "Defendants") (Court File

Nos. 96, 97). The United States filed a combined response to these motions (Court File No. 102)

and Dais replied (Court File No. 103). For the reasons discussed below, Defendants' motions will

be **DENIED**.

On March 23, 2010, a grand jury charged the defendants in an eleven-count Superseding

Indictment (Court File No. 28). Defendants were charged with kidnapping, use and carrying of a

firearm during and in relation to the kidnapping, conspiracy to possess with intent to distribute

cocaine, use and carrying of a firearm during and in relation to a drug trafficking offense, and

possession of a firearm by a convicted felon. Defendant Augustin was also charged with use of the

mail with the intent murder be committed, attempted murder of witnesses with an intent to prevent

their attendance and testimony at trial, and attempting to obstruct and impede an official proceeding.

Defendants proceeded to trial on October 18, 2010, and after a three-day trial, a jury found

Defendants guilty on all counts except the drug trafficking and corresponding use and carrying of

a firearm charges (Counts Three and Four). At the close of the government's proof, defense counsel

for Augustin and Dais moved for judgment of acquittal on all counts under Rule 29 of the Federal Rules of Criminal Procedure. These motions were renewed at the close of all proof and denied. Defendants have now filed timely motions for acquittal and/or a new trial.

## I. STANDARD OF REVIEW

### Rule 29 Motion for Judgment of Acquittal

In reviewing a challenge to the sufficiency of the evidence under Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Torres-Ramos*, 536 F.3d 542, 556 (6th Cir. 2008). A defendant challenging sufficiency of the evidence "bears a very heavy burden" and the same weight is afforded to both circumstantial and direct evidence. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010)(citations omitted). Defendants both assert the evidence is insufficient as a matter of law to sustain the convictions for the charged offenses.

### Rule 33 Motion for a New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to order a new trial is committed to a court's sound discretion, which is subject to review for abuse. *United States v. Talley*, 164 F.3d 989, 1002 (6th Cir. 1999); *United States v. Davis,* 15 F.3d 526, 531 (6th Cir. 1994). In deciding whether a new trial is warranted, a court should primarily concern itself with whether the prior proceedings were fair for the accused. *Talley*, 164 F.3d at 1002. Motions for new trials

are not favored and should only be granted with great caution and in extraordinary circumstances. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976); *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967). A defendant bears the burden of proving a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

## II.     ANALYSIS

Both Defendants' motions for judgment of acquittal challenge the sufficiency of the evidence on all counts. Defendants raise additional arguments in support of vacating the judgment and granting a new trial. Defendant Augustin challenges the federal kidnapping statute as unconstitutional as applied to the facts of the case and the introduction into evidence of the letters intercepted by law enforcement while Augustin was incarcerated. Defendant Dais claims the Court's decision not to sever Dais from his codefendant resulted in unfair prejudice and violated Dais's substantive and procedural due process rights. The Court will address each of these arguments in turn.

### A.     SUFFICIENCY OF THE EVIDENCE

#### 1. Federal Kidnapping

Defendants were convicted of violating the federal kidnapping statute, which criminalizes kidnapping where the offender "uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). Defendants challenge the sufficiency of the evidence proving their "use" of a cellular telephone in furtherance or in the commission of the offense. They further object to the Court's instruction that a cellular phone is an instrumentality of interstate commerce.

3

Defendants correctly note there was no evidence they made telephone calls on their own cellular telephones in the commission or in furtherance of the commission of the offense. However, testimony from Robert Jordan ("Jordan") and Jordan's mother, Deidre Watkins ("Watkins"), established multiple telephone calls with instructions for delivering ransom money, drugs or the drug supplier himself. Defendants want to limit the definition of "use" to include only calls made by the offender(s) on his personal telephone. Such a narrow definition is not dictated by "ordinary English grammar" or usage. *See, e.g., Flores-Figueroa v. United States*, 129 S.Ct. 1886, 1890-91 (2009). Rather, an ordinary and natural reading of the word "use" encompasses the active employment of the cellular telephone evidenced at trial. *See Astor v. Merritt*, 111 U.S. 202, 213 (1884)(defining "use" as "to employ, to derive service from"); Black's Law Dictionary (9th ed. 2009)(defining "use" as "[t]he application or employment of something").

Testimony from Jordan and Watkins provided sufficient evidence from which a jury could conclude the defendants, aided and abetted by each other, forced Jordan at gunpoint to make multiple telephone calls to his mother to obtain ransom money. Jordan testified the defendants, specifically Augustin, returned Jordan's telephone to him with specific instructions, to make a phone call to obtain the money, the drugs, or the drug supplier. Jordan then called Watkins, at which point Augustin put a gun to Jordan's head and commanded him to tell Watkins what had happened. Once Watkins indicated she would try to obtain the money, Augustin gave Jordan instructions as to where Watkins should deliver the money and a phone number to call once the money was available. Jordan repeated to Watkins the delivery location and the instructions he was given by Defendant Augustin. Watkins describes hearing other voices giving directions to Jordan with what to say during her telephone conversations with her son. Watkins further testified she was instructed to call

4

Curtis Smith's ("Smith") telephone once the ransom was obtained.  Testimony from Smith and Jordan established that Smith's and Jordan's phones were both taken from them at gunpoint by the defendants.

Although the most common meaning of an offender's use of a telephone would be associated with the offender personally making the call on his own phone, a natural reading of the statute does not exclude all other methods of "use."  In analyzing violations of 18 U.S.C. § 924(c), the Sixth Circuit has upheld an interpretation of "use" in relation to a firearm to include a defendant's trading a firearm for drugs, even though this may not be the most common method of using a firearm in relation to a drug trafficking offense.  *See, e.g., United States v. Kuehne*, 547 F.3d 667, 679 (6th Cir. 2008).  Defendants cannot avoid criminal liability under the statute by avoiding use of their own telephones and instead forcing an unwilling agent, Jordan, to make ransom demands on his own telephone per the defendants' commands.

The Court finds the government put forth ample evidence to establish defendants actively employed a cellular telephone by ordering the victim, Jordan, at gunpoint to inform his mother as to their ransom demands.  Defendants further employed the phones they obtained from Jordan and Smith to enable communications with Watkins as to the location and delivery of money.  This conduct falls squarely and reasonably within the definition of use.  The evidence presented of the purpose of the telephone communications further establishes calls were made  (by Jordan, at gunpoint) to express the defendants' demands for ransom and therefore in furtherance of the commission of the offense.

The Court instructed the jury "that a cellular telephone is an item that constitutes an instrumentality of interstate commerce."  Defendants challenge this instruction as it relieved the

5

government of its burden of proving the necessary elements of the offense. The kidnapping statute's jurisdictional element includes use of an "instrumentality **of** interstate or foreign commerce." 18 U.S.C. §1201(a) (emphasis added). Contrary to defendants' assertions, the statute does not mandate the government prove the instrumentality, in this case a cellular telephone, affected interstate commerce. Nor does the government bear the burden of establishing that a cellular telephone is an instrumentality of interstate commerce. The government instead bore the burden of proving beyond a reasonable doubt that an instrumentality of interstate commerce (*e.g.*, a cellular telephone) was used in the commission of or in furtherance of the kidnapping.

It is general knowledge that telephones, including cellular telephones are instrumentalities *of* interstate commerce whether or not they are used *in* interstate commerce. *See, e.g.*, *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities *of* interstate commerce." ); *United States v. Nader*, 542 F.3d 713, 722 (9th Cir. 2008) ("We hold that intrastate telephone calls made with intent to further unlawful activity can violate the Travel Act because the telephone is a facility in interstate commerce."); *United States v. Marek,* 238 F.3d 310, 318 n.35 (5th Cir. 2001)("Interstate commerce facilities that have created a criminal federal jurisdictional nexus during intrastate use include telephones[.]"); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997) (holding cellular telephones to be instrumentalities of interstate commerce); *see also United States v. Drury*, 396 F.3d 1303, 1310-11 (11th Cir. 2005) (interpreting "facility of interstate commerce" in 18 U.S.C. § 1958 to establish federal jurisdiction whenever such a facility, including a telephone, is used "regardless of whether the use is . . . purely intrastate in nature").

The statute requires use of a facility of interstate commerce and the government did not need

6

to further prove the instrumentality was used *in* interstate commerce to satisfy this element. By instructing the jury that cellular telephones constitute instrumentalities of interstate commerce, a fact established in caselaw and within the scope of general knowledge, there was no improper burden shifting. As discussed above, the government presented sufficient evidence for a jury to conclude the defendants, aided and abetted by each other, used a cellular telephone during the commission or in furtherance of the commission of the kidnapping.

Accordingly, the Court finds the proof put forth by the government provided a sufficient basis upon which a rational juror could find the necessary elements of the federal kidnapping statute established beyond a reasonable doubt.[1]

### 2. Use and Carrying of a Firearm During and In Relation to Kidnapping

Defendants' primary challenge to their convictions for violating 18 U.S.C. § 924(c)(1)(A), Count Two, stems from the insufficiency of the evidence and the Court's alleged lack of jurisdiction to sustain the predicate kidnapping conviction in Count One. "Where the Federal Court lacks jurisdiction over the underlying offense upon which [the] § 924(c) charge is predicated, prosecution of the §[]924(c) crime cannot be sustained" (Court File No. 97, p. 4). The Court has determined the jurisdictional requirements of the federal kidnapping statute have been established. Also, as discussed above, the Court finds sufficient evidence to sustain the kidnapping conviction. The testimony of multiple witnesses, including the kidnapping victim himself, established firearms were

---

[1]Defendants have not challenged any of the remaining elements of 18 U.S.C. § 1201(a), that the defendants knowingly and willfully confined, kidnapped, abducted, or carried away Robert Jordan or that they held Robert Jordan for ransom, reward, or other benefit or reason. Based on the evidence at trial, the Court finds sufficient basis for these to be established beyond a reasonable doubt.

7

used during and in relation to the kidnapping. Smith also described the defendants' drawing of firearms when Jordan was first put in the car by the defendants. The Court therefore finds the government presented sufficient evidence upon which a rational juror could find beyond a reasonable doubt the defendants used and carried firearms during and in relation to the kidnapping of Jordan.

### 3. **Possession of a Firearm by a Convicted Felon**

Although Defendants both include general language challenging convictions on all charged offenses, neither makes any specific challenge to their convictions for the felon-in-possession charges. To sustain convictions on Counts Five and Six, the government was required to prove the following elements beyond a reasonable doubt: (1) the defendant has been convicted of a crime punishable by imprisonment for more than one year; (2) the defendant, following his conviction, knowingly possessed a firearm; and (3) the firearm was in or affecting interstate or foreign commerce. The defendants stipulated to the first and third elements and the jury, although not required, was free to treat these elements as established. As to the final element, multiple witnesses testified as to the defendants' knowing possession of more than one firearm. The Court finds there was ample evidence to sustain convictions on both defendants' violation of 18 U.S.C. §922(g) as charged in Counts Five and Six.

### 4. **Use of the Mail with the Intent Murder Be Committed**

Defendant Augustin challenges the sufficiency of the evidence to his conviction on Count Seven, violation of 18 U.S.C. § 1958. To sustain a conviction on this count, the government was required to prove beyond a reasonable doubt: (1) the defendant used or caused someone else to use an interstate facility; (2) the use of an interstate facility was done with the intent that a murder be

8

committed in violation of the laws of any State or the United States; and (3) the murder in question was intended to be committed as consideration for the receipt of anything of value. Augustin challenges the proof of the first element. As proof of this element, the government presented evidence through the case agent, Wayne Jackson ("Jackson"), a retired agent with the Federal Bureau of Investigation. During Jackson's testimony, he described retrieving a letter from Ashleigh Bridges Hall's ("Hall") mailbox. This letter was written by Defendant Augustin and had the Bradley County Justice Center stamp on the back. Although defense counsel for Augustin argued and insinuated on cross-examination that the letter was mailed by Jackson himself as part of some type of conspiracy, there was no proof introduced of these speculations. A rational juror would be free to conclude that a stamped letter, written by the defendant to Hall and intercepted by law enforcement at Hall's mailbox is sufficient circumstantial evidence to establish Augustin used the interstate facility of the mail. In the letter, Augustin instructs Hall to pass on another letter in the envelope to a Justine Van Orden ("Van Orden"). The letter to Van Orden contains Augustin's specific request for Van Orden to coordinate with an alleged gang member and for her to make payment arrangements for the killing of Robert Jordan, Curtis Smith, and Deidre Watkins.

The Court finds the government presented sufficient proof in the form of Jackson's testimony and the letters received in the mail by Hall to establish the requisite elements of Count Seven beyond a reasonable doubt in the mind of a rational juror.

### 5. **Attempting to Kill Witnesses and Obstruction of an Official Proceeding**

In Counts Eight, Nine, and Ten, Defendant Augustin is charged with attempting to kill Smith, Jordan, and Watkins with the intent to prevent their attendance and testimony at an official proceeding, in violation of 18 U.S.C. § 1512(a)(1)(A). In Count Eleven, Augustin is charged with

9

attempting to obstruct, influence, and impede an official proceeding by having witnesses killed in violation of 18 U.S.C. § 1512(c)(2). Augustin argues the government failed to prove an overt act that was a "substantial step" with regard to any of these crimes. Rather, counsel claims Augustin's conduct "did not go beyond mere preparation or strongly confirm that he intended to commit murder for hire or to obstruct an official proceeding" (Court File No. 97, pp. 4-5). Defendant Augustin also contends the Court should have provided an additional explanation as to what constitutes a substantial step as requested by the defendant in his proposed jury instruction (Court File No. 84, p. 3).

The Court instructed the jury regarding the elements of Attempt as follows:

(1)     First, the defendant intended to commit the crime charged in the Superseding Indictment; and
(2)     Second,  the defendant did some overt act that was a substantial step towards committing the crime charged.
Merely preparing to commit a crime is not a substantial step.  The defendant's conduct must go beyond mere preparation, and must strongly confirm that he intended to commit murder for hire or to obstruct an official proceeding.  But the Government does not have to prove that the defendant did everything except the last act necessary to complete the crime.  A substantial step beyond mere preparation is enough.

The proof at trial was sufficient to establish Defendant Augustin engaged in conduct that went beyond mere preparation.  The government presented evidence of a telephone call made by Augustin to Hall regarding letters he was sending to her and providing her with instructions as to her actions upon receipt of these letters.  Also admitted into evidence were multiple letters from Augustin to Hall.   Augustin's first letter to Hall includes a separate letter to Van Orden (Government's Exhibit 4).  Augustin instructs Hall not to read the letter to Van Orden, but to call Van Orden and forward the letter to the address Van Orden provides. The letter to Van Orden

10

contains explicit instructions for contacting a member of the Bloods gang to arrange a "hit" on three

"witnesses," Jordan, Smith, and Watkins. Augustin also indicates his willingness to "double" the

going rate for such a hit in the letter to Van Orden and gives instructions regarding the transfer of

money. Augustin directs Van Orden to obtain the addresses for Jordan and Watkins from Hall and

to call the member of the Bloods and inform him she has three people she wants "knocked off" and

will pay whatever amount requested. Augustin also indicates in this letter he does not have an

address for Smith and it may be necessary to obtain this by threatening Jordan before they "cap

him."

Based on the extensive arrangements for contacting a gang member to complete "hits" on Watkins,

Smith, and Jordan, the coordination of transferring finances, and the gathering of information

regarding the addresses of the witnesses, there was ample evidence from which a trier of fact could

find a "substantial step" was taken on each of Counts Eight through Eleven.

The Court's jury instructions regarding attempt were taken from Sixth Circuit Criminal

Pattern Jury Instruction § 5.01- Attempt- Basic Elements. Defense counsel for Augustin submitted

the following additional language defining a substantial step:

> A "substantial step" must be something more than mere preparation, yet may be less
> than the last act necessary before the actual commission of the substantive crime.
> In order for behavior to be punishable as an attempt, it need not be incompatible with
> innocence, yet it must be necessary to the consummation of the crime and be of such
> a nature that a reasonable observer, viewing it in context could conclude beyond a
> reasonable doubt that it was undertaken in accordance with a design to violate the
> statute.
>
> Because of the problems of proving intent in attempt cases and the danger of
> conviction for mere thoughts, desires, or motives, it is required that the substantial
> step consist of objective acts that mark the defendant's conduct as criminal in nature.
> This objective conduct must unequivocally corroborate the required subjective intent
> to engage in the criminal conduct.

11

(Court File No. 84, p. 3).

The Court used its discretion and concluded these instructions were unnecessary and cumulative as the "substantial step" requirement was appropriately defined in the Sixth Circuit pattern instructions. The Court finds no error in denying Defendant Augustin's proposed instructions. Although the proposed instruction was a correct statement of the law, *see United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989), it was substantially covered by the Court's instruction on the "substantial step" requirement and there is no indication a failure to further define "substantial step" impaired the defendant's theory of the case. *See United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002) (reviewing denial of jury instruction proposal for abuse of discretion and reversing a refusal to give a requested instruction only when (1) requested instruction is correct statement of the law; (2) instruction is not substantially covered by other instructions given; and (3) failure to give requested instruction impairs defendant's theory of the case). Augustin's telephone call to Hall and letters to Hall and Van Orden could be classified as overt acts, which "corroborate the required subjective intent" to engage in the elimination of witnesses and obstructing an official proceeding. Thus, the evidence was sufficient to support a jury's finding Augustin's conduct was not mere preparation.

In light of the proof submitted at trial of Augustin's communications with Hall and Van Orden, a rational trier of fact could find the element of a "substantial step" established beyond a reasonable doubt.

## B.    CONSTITUTIONALITY OF THE FEDERAL KIDNAPPING STATUTE

Defendant Augustin attacks the constitutionality of § 1201(a) on its face and as applied to the facts. The Court previously upheld the constitutionality of the federal kidnapping statute but

12

declined to rule on the constitutionality as applied to the facts, "reserv[ing] for the jury the determination of whether the use of instrumentalities satisfie[d] the statute as charged in Count One of the Superseding Indictment" (Court File No. 61). Based on the evidence at trial, the Court finds the statute is constitutional as applied to these facts.

As discussed above, the calls the defendants forced Jordan to make were intrastate calls made using an instrumentality of interstate commerce, the cellular telephone. The fact the calls were not made across state lines does not render the application of the kidnapping statute unconstitutional. Congress is not bound by the limitations of the "substantial effects" test when, as here, it directly regulates the instrumentalities of interstate commerce, such as the telephone. *United States v. Al-Zubaidy*, 283 F.3d 804, 811 (6th Cir. 2002). Further, the use of the telephone in this case was more than an incidental use, in fact, the telephone was the means through which the ransom demands were made and Watkins was provided with delivery instructions. Testimony from government witnesses establishes Jordan talking on the phone while held at gunpoint by Augustin given specific instructions of what to say to his mother. Thus, the defendants' use of the telephone furthered the kidnapping and occurred during the commission of the kidnapping itself.

As discussed in its previous memorandum, the Court finds the federal kidnapping statute is constitutional on its face with the jurisdictional element satisfied by "limiting federal kidnappings to those which either involve the victim's or the offender's travel across state lines or where instrumentalities of interstate commerce are used in the commission of or in furtherance of the offense" (Court File No. 61, p. 7). The Court finds the defendants' actions and use of a cellular telephone falls squarely within the purview of the statute and based on Congress' plenary power to regulate the instrumentalities of interstate commerce, the statute is constitutional as applied to

13

these convictions.

## C. LETTERS FROM AUGUSTIN

Defendant Augustin argues the letters introduced into evidence by the government were highly prejudicial to him and should have been suppressed. Defendant Augustin raises no new arguments in support of overturning the Court's prior adjudication on this issue and "rel[ies] upon the authorities of law previously cited in the Motion to Suppress and the accompanying Memorandum and Brief in Support of said motion" (Court File No. 97, p. 2).

The constitutionality of the admissibility of Augustin's letters was previously litigated as a motion to suppress prior to trial. The Court, after a *de novo* review, overruled Defendant Augustin's objections and issued an order adopting the magistrate judge's report and recommendation and denying his motion to suppress (Court File No. 68). The Court reviewed the evidence from the suppression hearing and the relevant law and concluded Augustin's former cell-mate was not acting as a government agent and did not deliberately elicit information from Defendant in violation of the Sixth Amendment. This ruling has now become the law of the case and "as a rule[,] courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances." *United States v. Garcia*, 496 F.3d 495, 514 (6th Cir. 2007). The law-of-the-case doctrine refers to "the practice of courts generally to refuse to reopen what has been decided." *Christianson v. Colt Indus. Oper. Corp.,* 486 U.S. 800, 817 (1988). Defendant Augustin points to no specific evidence or testimony that undermines the Court's previous determination. Furthermore, the Court finds there was no evidence adduced at trial that contradicted, disturbed or refuted its reasoning in the memorandum denying the suppression motion (Court File No. 69).

The government was free to introduce Augustin's letters at trial and the contents of these

14

letters were probative evidence of multiple counts of the Superseding Indictment against Augustin. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)(citing *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).

Accordingly, the Court finds no reason to undermine its previous decision allowing the admission of Augustin's letters into evidence. The contents of the letters were legitimate probative evidence and did not result in unfair prejudice to Augustin so as to warrant a new trial in the interests of justice.

## D.     DENIAL OF MOTION TO SEVER

Defendant Dais argues the Court's failure to sever his trial from his codefendant resulted in unfair prejudice and violated his substantive and procedural due process rights under the Fifth and Sixth Amendments. The Court previously denied Defendant Dais's motion to sever, concluding the letters written by Augustin were non-testimonial and their admission did not violate the Confrontation Clause (Court File No. 57). Following the testimony of Augustin's fellow inmate, David Jones, the Court gave explicit instructions to the jury to limit their consideration of this evidence only as it pertains to Augustin and his intent to distribute drugs, specifically cocaine. The Court finds further support for a lack of "spillover" effect from this testimony as both Augustin and Dais were acquitted of the drug trafficking charges.

The Court reinforced the prior limiting instructions again at the end of trial, reminding the jury there were statements made by both defendants which could only be considered against the particular defendant who made them:

15

You have heard testimony regarding communication and letters written by Defendant ABRAHAM AUGUSTIN and Defendant LORRANCE DAIS while incarcerated. You can only consider this evidence against the respective defendant who issued this communication in deciding whether the Government has proved him guilty. You cannot consider it in any way against the other defendant.

Despite the multiple limiting instructions, Defendant Dais argues "[e]ven the strongest limiting instruction could not remedy the resulting bias against" him due to the evidence presented supporting Augustin's murder-for-hire scheme. The Court disagrees. A jury is presumed to be capable of following limiting instructions, sorting out the evidence, and separately considering each charge against each individual defendant. *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996); *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990). Although there may have been more communications from Augustin admitted in to evidence than the single item of correspondence from Dais, this does not warrant severance of their trials. *See United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004) (reasoning that "a defendant is not entitled to severance simply because the evidence against a co-defendant is far more damaging than the evidence against him." (citations omitted)).

As discussed above, there was ample evidence presented at trial to support convictions on the kidnapping and firearms charges against Dais. In addition to the evidence discussed above, Jordan and Smith testified as to the events of the kidnapping and use of firearms, Dais's correspondence to Augustin while incarcerated describes his version of the events and the need to "have the same story,"and physical evidence of the zip ties and mask used on Jordan discovered in field near the place of Dais's arrest, all strongly support Dais's conviction. The letters written by Augustin were highly probative of his murder-for-hire and obstruction of justice charges and were properly admitted as discussed above. The Court gave clear and adequate instructions to the jury

16

as to the proper consideration of this evidence and in light of the weight of the evidence against

Dais, there is no indication the jury failed to comply with the Court's instructions or was otherwise

unfairly prejudiced against him.

Accordingly, the Court finds the joint trial did not result in "compelling, specific, and actual

prejudice" *see United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005), and does not warrant the

extraordinary relief of a new trial.

## III.    CONCLUSION

Because the defendants have not shown the evidence was insufficient to support a guilty

verdict on any of the Counts,[2] the Court will **DENY** their renewed motions for judgment of acquittal.

As discussed above, there was ample evidence upon which the jury could have based its verdict, and

none of the other grounds raised by defendants demonstrate that a new trial is warranted in the

interests of justice.  Accordingly, the Court finds no basis for vacating the jury's verdict and

ordering a new trial and will **DENY** Defendants' alternative motions for a new trial (Court File No.

96, 97).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] The jury found the defendants not guilty of Counts Three and Four, conspiracy to possess with intent to distribute cocaine and use of a firearm in furtherance of a drug trafficking offense, therefore the Court has not included an analysis of these two counts as part of the ruling on Defendants' motions.

17

18