UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LORRANCE B. DAIS, ) | |
| ) | Case Nos. 1:09-cr-187, 1:15-cv-145 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Petitioner Lorrance B. Dais ("Petitioner"), a federal prisoner, filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 138].[1] Respondent United States of America (the "Government") filed a response in opposition to the 2255 Petition [Doc. 165], and Petitioner has replied [Doc. 179]. The Government concedes that Petitioner's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) is "unsustainable," but disputes the other grounds raised by Petitioner to vacate his convictions. For reasons that follow, the Court finds that an evidentiary hearing is unnecessary and will **GRANT** in part and **DENY** in part this 2255 Motion.

---

[1] All citations to the district court record are to the docket of Case No. 1:09-cr-187, which is the underlying criminal case.

## II. BACKGROUND

### A. Procedural History

Petitioner and his co-defendant, Abraham A. Augustin, were arrested on December 10, 2009, pursuant to a criminal complaint and warrant for kidnapping, carrying and using a firearm in furtherance of a crime of violence, and possession of a firearm as a felon in violation of 18 U.S.C. §§ 1201, 924(c) and 922(g), respectively [Doc. 1]. Subsequently, Petitioner and Augustin were indicted by the grand jury for the same offenses on December 22, 2009 [Doc. 12]. The grand jury returned a superseding indictment on March 23, 2010, against Petitioner and Augustin. The superseding indictment added counts against Petitioner and Augustin of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841, and carrying and using a firearm in relation to drug trafficking in violation of 21 U.S.C. § 924(c). The superseding indictment also added counts against Augustin alleging that he used the United States mail to attempt to hire a hitman in violation of 18 U.S.C. § 1958, and to obstruct an official proceeding by attempting to hire a hitman to have witnesses killed in violation of 18 U.S.C. §1512 [Doc. 28].

On April 19, 2010, Petitioner's counsel filed a motion under Federal Rule of Civil Procedure 14 to sever his trial from that of his co-defendant, Augustin, on the ground that he would be prejudiced if the two defendants were tried together [Doc. 38]. The district court denied this motion on June 1, 2010 [Doc. 57]. The trial started on October 18, 2010, and finished on October 20, 2010 [Docs. 86, 87, 88, 90]. The jury found Petitioner guilty of kidnapping (§ 1201); of using and carrying a firearm in relation to a crime of violence (§ 924(c)); and of being a felon in possession of a firearm (§ 922(g)). It acquitted him of conspiracy to distribute cocaine and of using and carrying a firearm in relation to drug trafficking [Doc. 90]. The jury convicted co-defendant Augustin on all counts except the two drug charges [Doc. 89].

2

The district court held a sentencing hearing on March 10, 2010, and entered judgment against Petitioner on March 17, 2010 [Doc. 114]. The district court sentenced Petitioner to 270 months' imprisonment and five years' supervised release for kidnapping (§ 1201), 120 months' imprisonment and five years' supervised release for carrying and possessing a firearm in relation to a crime of violence (§ 924(c)), and 120 months' imprisonment and three years' supervised release for possession of a firearm as a felon (§ 922(g)) [Judgment, Doc. 114]. The 270 months for kidnapping and the 120 months for felon in possession are to be served concurrently [*Id.*]. The 120 months for carrying and possessing a firearm in relation to a crime of violence is to be served consecutively [*Id.*]. Consequently, the aggregate sentence for Petitioner is 390 months' imprisonment. Petitioner was assessed $100.00 on each count for a special assessment of $300.00 [*Id.*]. Petitioner filed a timely appeal [Doc. 112] in which he raised the following issues:

> (1) the government's evidence was insufficient to support their convictions on various counts; (2) the federal kidnapping statute, as amended in 2006, is unconstitutional both on its face and as applied to the facts in this case; (3) the district court erred in declining to sever their trials; (4) the court's finding that Augustin discharged a firearm violated his rights under *Alleyne v. United States*, –––U.S. ––, 133 S. Ct. 2151, 186 L.Ed.2d 314 (2013); (5) the jury instructions and the evidence at trial constructively amended or varied from the Superseding Indictment; and (6) their sentences are substantively unreasonable.

The Sixth Circuit Court denied the appeal and affirmed the district court's judgment in *United States v. Dais*, 559 F. App'x 438 (6th Cir. 2014). The mandate was entered on April 15, 2015 [Doc. 131], and this 2255 Motion was timely filed on June 8, 2015 [Doc. 138].

**B.     Facts**

The following factual background is derived from the Sixth Circuit's opinion in *United States v. Dais*:

> The crucial events in this case occurred in a Chattanooga nightclub, at a nearby gas station, and in a rural area outside of Cleveland, Tennessee. Following their meeting at a nightclub called "Club Drinks," Augustin called Jordan and said

3

that he wanted to purchase six ounces of powder cocaine. Jordan, who is not a drug dealer, contacted a man named Hoss, who agreed to sell six ounces of cocaine to Augustin for $5,100.

The drug exchange took place at a gas station in Chattanooga. Augustin gave the cash to Jordan, who delivered the payment to Hoss, who then handed over the cocaine that Jordan delivered to Augustin. Smith was present at the gas station, but stayed in Jordan's vehicle during the transaction.

Augustin and Hoss were both dissatisfied with the transaction. Hoss contacted Jordan and said that he had been shorted $900. Jordan, hearing this information, called Augustin, who eventually agreed to meet the following morning for the purpose of "pay[ing] up."

When Jordan and Smith arrived at the meeting place the next day, Augustin told them to get into his BMW. Dais was already sitting in the driver's seat. Augustin and Dais then drew firearms, told Jordan and Smith that they were being kidnapped, confiscated their cellular telephones, and informed them that the cocaine from the earlier drug transaction was fake. The kidnappers handed back Smith's cellular telephone and instructed him to call a particular number to deliver their demands: they sought either the return of the $4,200 that Augustin had already paid, the delivery of real cocaine, or access to Hoss. Augustin then released Smith, but not before stating that he would kill both Smith and Jordan if the police were contacted.

Dais proceeded to a rural area near Cleveland, Tennessee, with Jordan blindfolded and bound in the back seat. Dais parked the car near a field and removed Jordan's blindfold. Augustin and Dais then returned Jordan's cellular telephone and instructed him "to call to get the demands." What Augustin was demanding was a ransom of $4,200 in order to recoup the amount that he had given Jordan for what turned out to be fake cocaine.

Jordan used his cellular telephone to call Deidre Watkins, his mother, who initially hung up because she thought her son was joking about being kidnapped. After this, Augustin aimed his gun at Jordan's head and told him to "tell her what happened." Jordan complied, and Watkins agreed to bring the ransom money to a nearby gas station.

While waiting for Watkins to call with information about the money, Augustin again threatened Jordan, claiming that he could kill and bury him at their current location. Augustin placed one bullet into the chamber of his revolver, spun the cylinder, aimed the weapon at Jordan's head, and pulled the trigger. The revolver did not fire. Augustin then fired one shot at a passing bird, presumably to prove that the revolver worked.

4

> The kidnappers were eventually arrested after a bank teller told the police about Watkins withdrawing $4,200 from her personal account to satisfy a ransom demand. Augustin and Dais were then booked on state charges and released on bond. After being released, Augustin called Jordan to say "[i]f you don't show up in court and testify, you know, it's okay." Jordan subsequently contacted Special Agent Wayne Jackson of the Federal Bureau of Investigation, who obtained and executed federal arrest warrants for Augustin and Dais.
>
> A short time later, another law-enforcement officer reported that Augustin had made a call from a jail telephone to arrange to "have something done" to the witnesses in this case. This same law-enforcement officer also reported that Augustin intended to mail a letter in which "he was asking for somebody to help do away with the witnesses." Special Agent Jackson retrieved this mailing, containing two letters, one of which provided instructions about how to hire a hit man to kill Jordan, Smith, and Watkins.

599 F. App'x at 441–42.

## III. STANDARDS OF REVIEW

### A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; or that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under Section 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order

5

to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

B.     **Procedural Default**

Generally, a federal prisoner is procedurally barred from raising on collateral review a claim which he did not raise on direct appeal unless that claim is ineffective assistance of counsel under the Sixth Amendment. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally-defaulted claim may be considered on collateral review if the petitioner can show (1) cause for failure to raise the claim

on direct appeal and (2) actual prejudice resulting from the alleged violation.  *Bousely*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700.  If the petitioner fails to show cause, then it is not necessary to consider whether petitioner suffered prejudice.  *Bousely*, 523 U.S. at 623.  Ineffective assistance of counsel is considered "cause" for failure to raise an issue on direct appeal.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (200); *Ratcliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

If the petitioner is unable to show cause and prejudice, he may still be able to obtain review of his claims if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice such as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent.  *Bousley*, 523 U.S. at 622–23 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *see also Peveler*, 269 F.3d at 698.

      **C.**      **Standard for Ineffective Assistance of Counsel**

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255.  The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255.  *Id.* at 687; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013).  Under this test, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense."  *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong of the *Strickland* test requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an

objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound . . . strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective-assistance claim to approach the inquiry in the same order or even to address both components of

8

the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

IV. ANALYSIS

Petitioner makes four arguments in his 2255 Motion. These arguments will be discussed in the order presented by Petitioner.

### A. Petitioner's argument that his felon-in-possession conviction under 18 U.S.C. § 922(g) should be vacated

Petitioner argues he was improperly convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) because the prior felony conviction upon which the § 922(g) gun charge was based was not actually a felony (*i.e.*, a crime punishable by an imprisonment term of more than one year). The Government concedes that the conviction and sentence for the § 922(g) violation should be vacated. The Court agrees.

To be properly convicted of being a felon in possession of a firearm, Petitioner needed to have "been [previously] convicted in any court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The record shows that Petitioner was convicted in North Carolina of breaking and entering, which is a Class H felony under General Statutes of North Carolina § 14-54(a) [Presentence Report at ¶ 51]. Under North Carolina's "unique statutory regime," a sentencing judge matches the defendant's class of offense and a defendant's prior "record level" to find a statutory table for sentencing. *United States v. Simmons*, 649 F.3d 237, 240 (4th Cir. 2011) (en banc). Based on the class of offense and the prior record level, the table provides three separate sentencing ranges: a mitigated range, a presumptive range, and an aggravated range. *Id.* The aggravated range cannot apply unless the State can prove two factors, but first the State must provide thirty days' notice of its intent to do so. *Id.* Then it must prove

(1) the existence of certain aggravating factors; and (2) that the defendant possesses fourteen or more criminal history points. *Id*. at 241.

At the time Petitioner was convicted for being a felon in possession of a firearm, there existed precedent in the Fourth Circuit providing guidance in assessing whether a defendant had the requisite prior felony conviction. In determining whether a defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, courts were to "consider the maximum *aggravated* sentence that could be imposed for [a North Carolina] crime upon a defendant with the worst possible criminal history." *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005). In North Carolina, if the aggravated range was found to apply, a Class H felony was punishable by up to twenty-five months' imprisonment. N.C. Gen. Stat. Ann. § 15A-1340.17. Thus, Petitioner's prior North Carolina felony conviction was found to be a sufficient basis upon which to convict Petitioner for possessing a firearm as a felon—even though, in Petitioner's case, he had not been sentenced under the aggravated range for the North Carolina conviction.

The Fourth Circuit in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), later reversed *Harp* based on the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), which discussed the proper analysis for determining whether a particular crime was one for which the maximum punishment was more than one year. Relying on *Carachuri*, the *Simmons* court held that one must consider the *specific* record level that the defendant had been assessed upon sentencing for the prior felony—not the highest possible record level a defendant *could* have been assessed under that class of felony. *Id.* at 244. In addition, the *Simmons* Court held that a court could not consider the maximum sentence for the aggravated

range of punishment unless the defendant had actually been sentenced under the aggravated range. *Id.*

In the instant case, the proper inquiry is the maximum sentence authorized by North Carolina law for an offender with Petitioner's prior criminal record and sentencing range. According to the Government, the maximum sentence Petitioner could have received for his particular Class H felony conviction was a term of eight months' imprisonment. N.C. Gen. Stat. Ann § 15A-1340.17. Because the maximum sentence Petitioner could have received was less than a year, his North Carolina conviction did not qualify as a predicate conviction for a § 922(g) offense. Consequently, he was not a "felon" in possession of a firearm, and his conviction for violating 18 U.S.C. § 922(g)(1) should be vacated.

The next issue to address is Petitioner's appropriate remedy following vacatur of his § 922(g) conviction. To resolve a meritorious § 2255 claim, a district court has discretion to select, "as may appear appropriate," one of four forms of relief: (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) correct the sentence. 28 U.S.C. § 2255(b); *see also Ajan v. United States*, 731 F.3d 629, 634 (6th Cir. 2013) (stating the district court has "wide berth" to choose from any of the four enumerated § 2255 remedies); *United States v. Hadden*, 475 F.3d 652, 661, 668 (4th Cir. 2007) (describing the four remedies under § 2255 as "broad and flexible").

Petitioner was sentenced to 270 months' imprisonment for kidnapping and 120 months' imprisonment for the felon-in-possession (§ 922(g)) conviction, with these two sentences to be served concurrently. Petitioner was sentenced to 120 months for his conviction for carrying a firearm in furtherance of a crime of violence (§ 924(c)), a sentence to be served consecutively. Thus, Petitioner has an aggregate sentence of 390 months' imprisonment. The § 922(g)

conviction had no bearing on the calculation of Petitioner's sentencing guideline range for kidnapping or for the § 924(c) conviction [*See* Presentence Report]. Moreover, when calculating Petitioner's criminal history points for sentencing on the kidnapping and § 924(c) convictions, the Court looked at the *actual* sentence given to Petitioner for his prior North Carolina conviction—not the maximum sentence he *could* have been given. *See* U.S. Sentencing Guidelines Manual § 4A1.1(b) (2009), [Presentence Report ¶ 51]. Consequently, the fact that the prior North Carolina conviction was incorrectly determined to qualify as the predicate offense for the § 922(g) conviction had no bearing on the sentences given for the kidnapping and 924(c) convictions.

Where vacatur of a single count of conviction alters a defendant's guidelines range on other counts of conviction, resentencing is ordinarily appropriate to "put [the petitioner] back in the same position he would have occupied had he not been convicted [of the vacated count] in the first place." *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997). Here, by contrast, vacatur of the § 922(g) conviction will not alter the sentencing guideline range for either of the two remaining convictions. Therefore, Petitioner can be placed in the position he would have occupied had he never been convicted of violating § 922(g) merely by vacating the conviction and sentence for that count and a reduction of his special assessment by $100. *See United States v. Introcaso*, 506 F.3d 260, 272–73 (3d Cir. 2007) (vacating one count of conviction on appeal, reducing the special assessment by $100, and explaining that "resentencing is unnecessary" because vacatur of one count did "not affect" the sentence for another count); *see also United States v. Boston*, 186 F. App'x 504, 506 (5th Cir. 2006) (same). Therefore, the Court need not recalculate the guidelines range nor resentence Petitioner. Vacatur of the conviction, the sentence, and the $100.00 special assessment for the § 922(g) conviction is

sufficient. Accordingly, the Court will **GRANT** Petitioner's 2255 Motion as to this issue and **VACATE** the 922(g) conviction, the sentence, and the $100.00 special assessment. The sentences, terms of supervised release, and the special assessments for the kidnapping conviction and the § 924(c) conviction remain in place.

### B. Petitioner's argument that his counsel was ineffective for failing to challenge the arrest warrant

Petitioner argues the warrant used to arrest him on December 10, 2009, was supported by an affidavit which contained false information. Therefore, Petitioner argues, this Court lacked jurisdiction over Petitioner to try him for the crimes charged. Further, Petitioner contends that his counsel, who knew the affidavit contained false information, was constitutionally ineffective for failing to challenge the arrest warrant and this Court's jurisdiction. Petitioner offers no authority for his arguments. Notably, Petitioner does not argue that his counsel should have sought suppression of any evidence on the ground that it was obtained as a result of an illegal arrest.

Assuming for purposes of argument that the arrest warrant affidavit contained falsehoods and Petitioner's counsel knew about the falsehoods, counsel's failure to challenge the validity of the arrest warrant itself was neither deficient nor prejudicial to Petitioner. The same day Petitioner was arrested, he received a preliminary hearing in which the magistrate judge heard evidence and reached a *de novo* decision that probable cause existed to believe Petitioner had committed the crimes for which he was charged. Moreover, the grand jury subsequently made independent findings of probable cause on two separate occasions, and Petitioner was tried on the basis of the second superseding indictment—not the arrest. An illegal arrest by itself is not a sufficient basis to bar a subsequent prosecution. *United States v. Crews*, 445 U.S. 463, 474 (1980) (respondent "cannot claim immunity from prosecution simply because his appearance in

court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction"); *Nelson v. Jackson*, Case No. 16-2623, 2017 WL 5624278, at *2 (6th Cir. July 17, 2017) ("Because Nelson only challenges the arrest warrant—and does not identify any ill-gotten incriminating evidence—his argument must fail.") Consequently, Petitioner's counsel did not act deficiently by not challenging the arrest warrant; Petitioner was not prejudiced by this omission.

### C. Petitioner's argument that trial counsel was ineffective for not filing a motion to suppress evidence found inside a motel room in Cleveland, Tennessee

Petitioner asserts that his trial counsel was ineffective for failing to seek suppression of evidence that police found in a motel room the same day of the kidnapping. To address this argument, the Court must review certain facts which were not included by the Sixth Circuit in its decision regarding this case.

After Petitioner and Augustin released Smith with instructions to bring them $4,200, real cocaine, or Hoss himself, Petitioner and Augustin drove Jordan to a rural, secluded area in Bradley County, Tennessee [Trial Transcript at 251-56].[2] Jordan phoned his mother, Deirdre Watkins, and communicated his dire circumstances to her, and she agreed to get the money for him [*Id.* at 258]. Watkins went to her bank to secure the money and called the police from the bank to tell them her son had been kidnapped [*Id.* at 375-78]. Smith, who had been released by the kidnappers, went to Jordan's house to tell his mother (Watkins) that Jordan had been kidnapped [*Id.* at 344]. The police were there when Smith arrived [*Id.*]. Smith's phone, which had been retained by the kidnappers, had a GPS locater in the phone, and Smith was able to help

---

[2] The relevant portions of the trial transcript can be found on the docket. (*See* Docs. 120, 122.)

14

police use the locator to track the phone. This eventually led them to find Petitioner and Jordan [*Id.* at 109, 112, 345-46].

Meanwhile, after law enforcement became aware of the kidnapping, but before they were able to locate Petitioner and Jordan, they issued a "lookout" for Augustin and his vehicle in Bradley County, Tennessee [*Id*. at 109-112]. A Bradley County deputy spotted Augustin's vehicle at a motel near the interstate and observed Augustin exit a motel room and drive away [*Id*.]. While some officers stopped and arrested Augustin, other officers entered the motel room to look for Jordan but found no one [*Id*. at 110-11]. A search warrant was obtained for the motel room and officers found scales, an assault rifle, ammunition, and a guest registration card in Augustin's name [*Id*. at 112].

Petitioner asserts his counsel was constitutionally ineffective for not moving to suppress the evidence found in the motel room because the initial entry into the motel room was not, as the government claims, supported by exigent circumstances, and because the search warrant contained false statements and, therefore, was not supported by probable cause.

In this case, it is unnecessary to consider the specifics of Petitioner's argument, because he cannot meet the threshold of a legitimate expectation of privacy in the motel room. In its response to Petitioner's argument regarding this issue, the Government responded that Petitioner did not have a legitimate expectation of privacy in the motel room. Petitioner filed a reply but did not address this contention. The Court agrees with the Government's position.

"It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). Absent a

15

legitimate expectation of privacy in the premises searched, the Fourth Amendment offers no protections to the defendant against police intrusions into the premises searched. *See United States v. Hunyady*, 409 F.3d 297, 300 (6th Cir. 2005) (the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place") (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). One cannot vicariously assert the Fourth Amendment rights of another person; he can only assert his own. *Alderman v. United States*, 394 U.S. 165, 174 (1969), *United States v. Hardin*, 539 F.3d 404, 428 (6th Cir. 2008).

A person has a legitimate expectation of privacy in a motel room in which he is an overnight guest, *Minnesota v. Olson,* 495 U.S. 91 (1990); however, Petitioner does not aver that, at any time during the events in question, he rented the motel room or even entered the motel room. Therefore, he has not met his burden to show he had a legitimate expectation of privacy in the motel room in question. He cannot show that his counsel's failure to file a motion to suppress evidence seized from the motel room was deficient in any respect or prejudicial to him. Petitioner's argument has no foundation.

**D.  Petitioner's argument that trial counsel was constitutionally ineffective for not moving to sever the case pursuant to Federal Rule of Criminal Procedure 8**

According to Petitioner, his trial counsel should have moved to sever his case from that of his co-defendant, Augustin, under Federal Rule of Criminal Procedure 8(b). More specifically, he alleges that his counsel should have argued misjoinder of the two defendants because Petitioner was not involved in the murder-for-hire plot which, he contends, was an entirely separate transaction from the kidnapping charge.

Rule 8(b) provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Questions of misjoinder of defendants are properly addressed by a motion to sever under Rule 8 while "[q]uestions of prejudice are properly raised under [Federal Rule of Criminal Procedure] 14 only if joinder of the multiple defendants is proper under Rule 8(b)." *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982).

Rather than allege that Petitioner and Augustin were improperly joined as co-defendants under Rule 8(b), trial counsel moved to sever under Rule 14 on the ground Petitioner would be unfairly prejudiced by trial evidence against Augustin on the murder-for-hire count, *to wit*, Augustin's letters soliciting a hit man [Doc. 38, Mot. To Sever at 1-2]. Upon review, the Court of Appeals found the district court had not erred in refusing to grant Petitioner's Rule 14 motion.[3] *United States v. Dais*, 559 F. App'x 438, 446-47 (6th Cir. 2014). The Sixth Circuit explained, "[t]o the extent Dais claims that being tried jointly with Augustin increased his likelihood of guilt by association, this is precisely the type of generalized argument that cannot sustain a motion to sever . . . ." *Dais*, 559 F. App'x at 446 (internal quotation omitted). The Sixth Circuit further noted that the district court instructed the jury that the defendants were charged with separate crimes and that the jury was to consider the evidence separately for each defendant on each charge. *Id.* at 446.

---

[3] Instead of using an abuse of discretion standard, the Sixth Circuit applied a plain error standard of review because trial counsel did not renew the motion for severance at the close of evidence. *United States v. Dais*, 559 F. App'x 438, 446 (6th Cir. 2014) (citing *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir.2002) ("Since Lopez failed to renew his motion to sever at the close of evidence, we can reverse only upon a showing of plain error.")).

The Rule 14 grounds upon which Petitioner's trial counsel sought severance are not the same as the Rule 8(b) grounds upon which Petitioner now says his counsel should have moved. Consequently, the Court will consider whether counsel's failure to move for severance under Rule 8(b) constituted ineffective assistance of counsel in violation of the Sixth Amendment.

"The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions . . . ." *Id.* at 441. "[A] group of acts or transactions constitutes a series if they are logically interrelated, and [] a group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." *United States v. Beverly*, 369 F.3d 516, 533 (6th Cir. 2004) (internal citations omitted).

In this case, the murder-for-hire scheme was part of a continuing series of transactions which began with the common scheme of kidnapping Jordan to recover the money spent on the fake cocaine. Without the kidnapping and the subsequent arrests of Petitioner and his co-defendant, there would not have been a murder-for-hire scheme. The kidnapping and the murder-for-hire scheme are logically interrelated—even if Petitioner was not charged with the murder-for-hire scheme. The Court concludes trial counsel was not deficient in failing to move for severance on this basis because it would not have been a meritorious motion.

Alternatively, even if Petitioner's counsel was deficient in failing to move for severance under Rule 8(b), that failure was harmless error and Petitioner has therefore suffered no prejudice. Misjoinder of defendants does not, by itself, constitute constitutional error and is subject to review under the harmless error analysis. *United States v. Lane*, 474 U.S. 438, 446-49 (1986). "[A]n error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or

influence in determining the jury's verdict." *Id.* at 449 (internal citations omitted). In the instant case, as the Sixth Circuit noted, the district court instructed the jury that defendants were charged with separate crimes and that the jury was to consider the evidence separately for each defendant on each charge. The Sixth Circuit stated, "[w]e have no reason to believe that the jury failed to follow the Court's instructions . . . ." *Dais*, 559 F. App'x at 446. In addition, there was substantial evidence to convict Petitioner for kidnapping and use of a firearm in furtherance of a violent crime. Petitioner has not demonstrated how he was prejudiced by any failure of his counsel to move for a severance under Rule 8(b). The Court concludes this claim is meritless.

## V. CONCLUSION

For the reasons stated herein, the Court concludes:

1. Petitioner's § 2255 Motion will be **GRANTED** to the extent that Petitioner seeks to have his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g) vacated. The Court will **VACATE** Petitioner's conviction under 18 U.S.C. § 922(g), his sentence for such conviction, and the attendant $100.00 special assessment.

2. The Court's judgment and sentence imposed against Petitioner for kidnapping in violation of 18 U.S.C. §§ 1201 and using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), shall **REMAIN UNCHANGED**.

3. Petitioner's § 2255 Motion as to all other grounds shall be **DENIED**. No evidentiary hearing for this petition brought pursuant to 28 U.S.C. § 2255 is necessary, and the Court concludes on the basis of the record before it that Petitioner is not entitled to any further relief.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**